2024 IL App (1st) 23-2400-U
Order filed: May 2 , 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-2400B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23MC1114576 |
| | ) | |
| PIERRE THORNE, | ) | Honorable |
| | ) | Maryam Ahmad, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justice Hoffman concurred in the judgment.
Justice Ocasio specially concurred.

**ORDER**

¶ 1     *Held*:  The circuit court's order granting the State's petition to deny pretrial release is affirmed over defendant's contention that the trial court erred in considering the State's proffer from police reports relating to his prior charges which were not tendered to defendant before the hearing.

¶ 2     Defendant, Pierre Thorne, appeals from an order granting the State's petition to deny his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] Defendant argues that he was denied a fair

_____

[1] While commonly known by these names, neither the Illinois Compiled Statutes nor the forgoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T

hearing on the State's petition where the State relied, in part, on facts contained in defendant's prior police reports, but failed to produce those police reports in violation of section 6.1(f)(1) of the Code (725 ILCS 5/110-6.1(f)(1) (West 2022)). For the following reasons, we affirm.

¶ 3    Defendant was arrested on November 29, 2023 for an incident which occurred on December 8, 2022. The State filed felony complaints against defendant, which charged him with aggravated battery in a public way and aggravated battery causing great bodily harm and alleged defendant, "without legal justification, knowingly and intentionally caused bodily harm to Jay S. Rudman (victim) in that he struck the victim in the head with a deadly weapon" at 100 West Madison Street in Chicago, Illinois 60602, a public way.

¶ 4    That same day, the State filed a verified petition seeking to deny defendant pretrial release pursuant to sections 110-2 and 110-6.1(a)(1.5) of the Code. *Id.* § 110-2, 6.1(a)(1.5). The State generally alleged that defendant was charged with a detainable offense—aggravated battery causing great bodily harm—and that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no less restrictive conditions would avoid that threat. More specifically, the petition alleged:

> "On 12/8/2022, 11:00 a.m., 100 W. Madison St., [defendant] grabbed a metal object from the ground (possibly a metal pipe) walked behind [the victim], whom he did not know and who did not provoke [defendant]. Then, [defendant] struck the back of [the victim's] head with the metal object. [The victim] immediately fell to the ground and began bleeding

Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. The supreme court initially stayed the implementation of this legislation but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

profusely from the back of his head and also sustained lacerations to his face from his fall to the ground. [The witness] got a good look at [defendant] as he fled the scene past [the witness's] stationary car. The incident was captured on POD camera. [Defendant's] identity was learned by comparing his image from the POD video to images from the [Secretary] of State. On 9/21/23, [the witness] identified [defendant] in a photo array. [Defendant] was placed in custody on 11/29/23. Post-*Miranda*, he identified himself in still images from the POD vid[eo]."

¶ 5 And on that date, the circuit court held a hearing on the petition. At the hearing, defendant was represented by an Assistant Public Defender (APD). At the outset of the hearing, the APD acknowledged "receipt of the People's petition as well as the arrest report, the original case incident report, the [Chicago Police Department (CPD)] rap sheet, and a written version of the State's [proffer]. We are answering ready for hearing."

¶ 6 The Assistant State's Attorney (ASA) was placed under oath and made the State's proffer. On December 8, 2022 at 11:00 a.m. defendant and the victim were walking down Madison Street in Chicago. Defendant, unprovoked, grabbed an "unknown metal object, possibly a metal pipe, from the ground," walked behind the victim, and struck the victim on the back of the head. The victim fell to the ground and defendant dropped the metal object. There is no evidence that defendant knew the victim. The victim did not see defendant before being struck; the attack "came out of nowhere."

¶ 7 A man sitting in the passenger's side of a stationary vehicle witnessed the incident (witness). After the attack, the witness observed defendant pick up the metal object from the ground, walk past the passenger side of the witness's vehicle, and leave the scene. The witness then offered assistance to the victim and called 911.

¶ 8 When the officers arrived, they spoke with the witness and observed the victim on the ground "bleeding profusely from the back of his head." The victim was transported to the hospital. The victim sustained multiple fractures to his face and jaw, a laceration to his chin, a laceration to the exterior scalp, and an abrasion to his left eye. He also sustained a broken jaw, an injury to his nose, and he lost several teeth. The victim required substantial medical attention following this incident including multiple reconstructive surgeries. His face has been permanently disfigured.

¶ 9 The officers recovered POD camera footage of the incident and defendant leaving the scene immediately following the attack. The officers identified defendant through the Illinois State Police Emergency Radio Network. The officers compared the name, driver's license information, and Secretary of State image of the defendant to the POD video. Defendant's photograph was then placed in a photo array and the officers administered that photo array to the witness on September 21, 2023. The witness positively identified defendant as the offender who he saw hit the victim with the metal object. After the witness identified defendant, officers went to defendant's last known address. When defendant exited the residence, the officers took him into custody and advised him of his rights. Defendant waived his rights and made an identification of himself in a still image from the POD video of the attack.

¶ 10 The State made a proffer of defendant's criminal background including that at age 30, he had been arrested 57 times as an adult and had several misdemeanor convictions. In December of 2020, defendant was convicted of Class A misdemeanors, battery and criminal damage to property, and sentenced to concurrent one-year probations, which were terminated unsatisfactorily. In December 2019, defendant was convicted of a Class A battery, causing bodily harm, and sentenced to one month in jail. In June 2018, defendant was convicted of aggravated assault of a transit authority employee, a Class A misdemeanor, and sentenced to four days in jail. In June 2017,

defendant was convicted of two different Class A misdemeanor battery charges, causing bodily harm, and sentenced to concurrent 55 days in jail. In December 2012, defendant was convicted of criminal trespass to real property and sentenced to two days in jail. In September 2016, defendant was convicted of criminal trespass to land and sentenced to 11 days in jail. All of this background was in the CPD rap sheet, which had been provided to defendant.

¶ 11    The State then began to give factual details as to defendant's prior criminal cases. The APD objected on the basis that the State had not tendered any "information about these previous convictions beyond the rap sheet." The State responded that "the public defender represented defendant in each one of these cases and, therefore, would have all of the records accessible prior to this hearing." The circuit court overruled the objection.

¶ 12    The State continued with its proffer. In three misdemeanor battery cases, defendant struck a victim in the back of the head with his fist and in two assault cases, defendant used a metal object to threaten a victim. The State gave additional details to the location of defendant's criminal history as follows:

> "December 2020, 251 East Huron, punched a nurse at Northwestern; November 2020, criminal damage to property, 202 East Ohio; September 2020, criminal damage to property; 1212 South Michigan, smashed the front glass of a pizza establishment when he demanded pizza for no money and his demands were denied; 30 East Kinzie, May 2019, verbal altercation with a female homeless person over who gets to stay at the underpass of 25 East Kinzie. The defendant struck the victim on the head with an aluminum cylinder. Going back to February of 2017, Judge, I would proffer that the other offenses that he has committed during that timeframe have all be in the downtown Chicago area. That is where he operates, and that goes to my point about the danger that he poses to the community."

The information about the addresses of the offenses are listed in defendant's CPD rap sheet.

¶ 13    As to the danger which defendant poses to the community, the State also emphasized that defendant's conduct here was "incredibly brutal," random, and unprovoked and that he had previously engaged in similar violent acts in a similar locale. Further, the State maintained because defendant has not learned from his prior cases, there is no condition that could be imposed that would mitigate that risk.

¶ 14    Defense counsel then stated,

"I believe Counsel is relying on police reports that are in his possession and not internal information from the State's Attorney's Office as has been in the case and other instances. It is the position of our office that according to the statute they are supposed to tender all police reports currently in their possession. We have not received the police reports from these prior convictions which the State relied upon in their proffer."

The circuit court responded that "[t]he defendant was represented by the Law office of the Cook County Public Defender. You all have all these court files. Discovery is tendered, and I will also point out that this information is public information."

¶ 15    Defense counsel proffered that defendant is a high school graduate and a lifelong resident of Cook County with family support in the area.

¶ 16    Defense counsel argued that the proof was not evident nor the presumption great that defendant is the person who committed the offense, and that the identification of defendant was in question. As to dangerousness, defense counsel argued that defendant was a 4 under his pretrial safety assessment. As for conditions, defense counsel argued that the court could impose conditions or a combination of conditions that would ameliorate whatever risk defendant poses.

¶ 17     In rebuttal, the State maintained that detention is the only way to mitigate the risk defendant poses to the community. If defendant is placed on electronic monitoring or any lesser condition of release, he can commit the same types of crimes against the community.

¶ 18     Thereafter, a pretrial services officer testified to the results of defendant's safety assessment: "New criminal activity scale four, failure to appear scale four, yes to the new violent criminal activity flag. PFA score coincides with supervision level 3." The pretrial assessment written report to the court also indicated that defendant's criminal history included three prior violent convictions and prior failures to appear.

¶ 19     At the close of the hearing, the court made oral findings. The court first concluded that the State had shown by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense of aggravated battery, great bodily harm. The court detailed the facts and nature of the incident and the significant injuries to the victim and noted the witness's identification of defendant. The court concluded that defendant's post-*Miranda* identification of himself in an image from the POD video diminished any argument against the credibility of the witness's identification.

¶ 20     As to dangerousness, whether defendant poses a real and present threat, the court stated:

> "When the Court heard defendant's criminal history, to say that it was shocking to the consciousness is an understatement. It is immensely concerning, particularly the number of battery convictions in the Loop and involving hitting victims in the back of the head.

> The Court also notes that there is a violence flag, meaning were the defendant to violate the conditions of this Court's release, the likelihood that it would be with a crime of violence.

The Court believes based on the horrific injuries that this complaining witness suffered, the random nature of this attack, and the defendant's criminal history and the violence flag, that he poses a real and present threat to persons in the community."

¶ 21 As to whether any conditions short of detention, including electronic home monitoring, could mitigate the risk to the community, the court stated:

"However, electronic monitoring has a number of shortcomings. [O]ne, individuals pursuant to the PFA receive two days off from electronic monitoring, call it what you will, furlough, time away, from electronic monitoring.

Additionally, if there is a violation and someone goes AWOL from a facility or a location, that violation can't be filed for 48 hours.

So the Court finds that electronic monitoring has too many ways in which it could be violated, and because defendant's criminal history, the nature of this attack, the Court believes *** that the only way to ensure the safety of the public while [defendant] awaits trial on this case is pretrial detention."

¶ 22 The circuit court granted the State's petition to deny the pretrial release of defendant. In its written order as to the proof relating to defendant's commission of the charged offenses, the court stated that a witness identified defendant as the offender and defendant identified himself in an incident photo as the person who battered the victim. As to the finding that defendant poses a danger, the order stated that defendant "brutally and randomly beat" the victim who suffered permanent disfigurement and defendant has prior random battery convictions "where he batters others in the back of the head." As to the finding that there were no combination of conditions which could mitigate the danger, the order states that defendant has "54 arrests and 8

[misdemeanor] convictions-many for random crimes of violence. EM can be violated in many ways. Only detention can keep the community safe."

¶ 23    Defendant timely filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). A supporting record and report of proceedings have been filed with this court, and both defendant and the State have filed a memorandum.

¶ 24    On appeal, defendant contends, that the court erred in considering facts from police reports relating to defendant's prior crimes, which the State had not tendered to defense counsel prior to the detention hearing in violation of section 110-6.1(f)(1) of the Code (725 ILCS 5/110-6.1(f)(1) (West 2022)). He asks that we reverse the detention order outright or in the alternative to vacate the detention order and remand for a new hearing.

¶ 25    Section 6.1(f)(1) provides that,

> "[p]rior to the hearing, the State shall tender to the defendant copies of the defendant's criminal history available, any written or recorded statements, and the substance of any oral statements made by any person, if relied upon by the State in its petition, and any police reports in the prosecutor's possession at the time of the hearing." *Id.*

The questions raised by defendant's appeal are whether the State violated this section by failing to tender to the APD any police reports it had relating to defendant's prior criminal conduct, whether the court erred in considering the State's proffer based on those police reports, and whether the detention order should be reversed or vacated.

¶ 26    In determining whether the State was obligated to tender the police reports of defendant's other crimes, we must construe section 6.1(f)(1), which we do under a *de novo* standard. *People v. Taylor*, 2023 IL 128316, ¶ 45. The primary goal of statutory construction is to ascertain and give effect to the intention of the legislature. *Jackson v. Board of Election Commissioners*, 2012 IL

111928, ¶ 48. The best indication of the legislative intent is the plain language of the statute. *Id.* "The statute should be evaluated as a whole, with each provision construed in connection with every other section. When the statutory language is clear, we must apply the statute as written without resort to other tools of construction." *Id.*

¶ 27 The purpose of section 6.1(f)(1) is to ensure that defendant has notice of the information upon which the State will make its proffer and can review the records to provide a proffer in support of release and to articulate challenges to the State's proffer. See *People v. Mezo*, 2024 IL App (3d) 230499, ¶ 11.

¶ 28 Section 6.1(f)(1) distinguishes a defendant's criminal history from police reports. The State did produce defendant's available criminal history, the CPD rap sheet. However, under the plain language of the section, the State was also to produce "police reports in the prosecutor's possession." The statute does not limit this duty to only police reports relating to the charged offenses at issue. In construing a statute, we may not impose limitations or restrictions which are not contained in the statutory language. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. Based on the plain language of the statute and its purpose, we conclude that prior to the detention hearing, the State had a duty to tender to defendant police reports in its possession relating to the offenses at issue and any police reports relating to defendant's prior crimes which were in the possession of the prosecutor, particularly if the State intends to rely on those reports at the detention hearing.

¶ 29 However, we must now consider whether the circuit court erred in considering that portion the State's proffer, which may have been based on earlier police reports. In framing the issue in this way, we need not decide whether the court erred in overruling defendant's objection to that

part of the proffer on the basis that the details of the prior charges would have been available to the APD because the office represented defendant in those prior cases.

¶ 30    Defendant cites to *Mezo*, 2024 IL App (3d) 230499 in arguing the circuit court did commit error. In *Mezo*, the State, prior to defendant's pretrial hearing, failed to provide the defendant with a copy of his criminal history. *Id.*¶ 4. At the hearing, defense counsel noted this failure and the circuit court agreed that the statute required disclosure. *Id.* However, at the detention hearing, the State relied on, and the circuit court considered the defendant's criminal background. *Id.* ¶ 4-6. On appeal, the Third District held that the State's failure to comply with and the court's failure to hold the State to its obligation to tender the criminal history warranted a new hearing. *Id.* ¶ 10.

¶ 31    The court reasoned that, based on the plain language of the statute, the legislature intended that the State tender to the defense any available criminal history prior to a detention hearing. *Id.* ¶ 11. Section 6.1(f)(1) serves: "to allow the defense an adequate opportunity to effectively respond to the State's petition to deny release, to ensure the reliability of information presented to the court under the strict timeframes of the Code's pretrial release provisions, and to ensure a defendant receives a fair hearing on the State's petition to deny release." *Id.* ¶ 11 The court supported its conclusion by referring to section 110-5(f) of the Code, which states:

> " 'Prior to the defendant's first appearance, *and with sufficient time for meaningful attorney-client contact to gather information in order to advocate effectively for the defendant's pretrial release*, the court shall appoint [counsel] \*\*\*. Defense counsel *shall have access to the same documentary information* relied upon by the prosecution and presented to the court.' " (Emphasis in original.) *Id.* ¶ 11 (quoting 725 ILCS 5/110-5(f) (West 2022).

The court reversed the circuit court's detention order and remanded for a new hearing on the State's petition. *Id.* ¶ 15.

¶ 32     In determining whether the circuit court erred in considering the information from the prior police reports and whether there should be a new detention hearing here, we find the decision in *People v. Davis*, 2023 IL App (1st) 231856, more persuasive. The defendant in that case challenged his detention order by arguing that the State improperly relied on, and the court improperly considered his criminal history where the State failed to tender his criminal record prior to the detention hearing. *Id.* ¶ 36. This court found that, although the State failed to produce defendant's criminal history, defendant failed to point to any specific language in the Code that suggests that the circuit court is precluded from considering defendant's criminal history. *Id.* ¶ 40. Instead, we pointed to section 6.1(f)(2) of the Code, which provides that evidence at a detention hearing may be presented "by way of proffer based upon reliable information" and section 6.1(f)(5), which provides that the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* We concluded that under these sections, there was no error where the defendant did not claim that the State proffered an inaccurate version of his criminal history or that the history was unreliable. Further, the State's failure to provide defendant with a copy of his criminal history resulted in no prejudice where defendant's counsel demonstrated a proficient knowledge of his criminal history at his pretrial release hearing. *Id.* ¶ 41.

¶ 33     We find that there was no prejudice in this case. While the State did not produce any police reports relating to defendant's prior offenses, unlike in *Mezo* and *Davis*, the State did timely tender to defendant a copy of his criminal history. This history set forth with some detail defendant's arrests and convictions which were part of the State's proffer to the court. The criminal history

included defendant's charges for battery, noting that the charges involved bodily harm, and assault. The CPD rap sheet also provided the locations where those incidences took place, which were also part of the State's proffer. Additionally, defendant's pretrial assessment indicated that defendant had three prior violent convictions and had a "violence flag."

¶ 34    And as we recognized in *Davis*, a court may consider a proffer based on reliable information under section 6.1(f)(2). Defendant does not argue that the State's proffer as to his criminal history, including the detail, which was not included in his criminal history, was in any way inaccurate or unreliable. The proffer was consistent with the criminal history which had been provided to defendant by way of the CPD rap sheet. As held in *Davis*, we find that the trial court was not prevented from considering the State's proffer relating to detail from police reports about defendant's prior crimes which were listed in the tendered criminal history.

¶ 35    Further, even if there was any error, without considering the detail from the prior police reports, we would find the detention order was proper.

¶ 36    The State has the burden to prove by clear and convincing evidence that, *inter alia*, the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The Code provides a nonexclusive list of factors that the circuit court may consider when making a determination that the defendant poses a real and present threat to any person or the community, which include: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or

attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Act. *Id.* 110-6.1(g).

¶ 37    Appeals of bail orders under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023) have historically been reviewed using an abuse of discretion standard. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9). While Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) provides a new procedure for these types of appeals considering the changes made to the Code by the Act, "the Act neither mandates nor suggests a different standard of review." *Inman*, 2023 IL App (4th) 230864, ¶ 11. There is some debate among the appellate districts concerning the appropriate standard of review with respect to appeals under Rule 604(h). See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (observing split between districts regarding abuse of discretion and manifest weight of the evidence standard under the Act). While we would affirm under either standard, we conclude that a circuit court's ultimate decision to detain or not is subject to review for an abuse of discretion (*Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9)), while a circuit court's factual determinations are reviewed under the manifest weight standard (*People v. Rodriquez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12).

¶ 38    An abuse of discretion occurs where the court's judgment is fanciful, arbitrary, or unreasonable, or where no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. In conducting this review, we will not substitute the circuit court's factual

and credibility findings with our own. *Inman*, 2023 IL App (4th) 230864, ¶ 11. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 39    In finding that defendant posed a danger to the community, the court relied on the "horrific" nature of the incident, defendant's criminal history, and the violence flag in his pretrial assessment. In its proffer, the State informed the circuit court that the charges stemmed from an incident in which defendant, unprovoked, picked up a metal object from the ground and randomly struck a pedestrian in the back of the head. This incident occurred on a public street in the middle of the day. As a result of defendant's violent and surprise attack the victim suffered severe injuries including, multiple face fractures, lacerations to his chin and scalp, an abrasion to his eye, a broken jaw, and lost teeth. The victim's face has been permanently disfigured. As to defendant's background, not including those details in the police reports, the State proffered that he had been arrested 57 times as an adult and had several misdemeanor convictions. The rap sheet indicated that his prior history included charges for battery involving bodily harm and assault charges. The rap sheet demonstrated that these earlier incidents took place in similar public and populated locales. The State provided sufficient clear and convincing evidence aside from the details in the police reports which were not tendered that defendant poses a real and imminent danger to the community.

¶ 40    As to the issue of whether there were any conditions which could mitigate the threat posed by defendant to the community, defendant's criminal history showed that he repeatedly committed criminal offenses, had recently violated probation, and had failures to appear. The court specifically found that electronic home monitoring would not protect the public in that there are

many "shortcomings" with electronic home monitoring and it can be violated in so many ways. The court concluded that only detention could mitigate the real and present danger presented by defendant. See *People v Whitaker*, 2024 IL App (1st) 232009 (electronic home monitoring is not an infallible method of preventing harm to public safety).

¶ 41    Based on the proffered evidence, not considering the details from the alleged prior police reports, the circuit court's findings were not against the manifest weight of the evidence. And we find that the determination that defendant should be detained pretrial was not an abuse of discretion. As a result, defendant was not prejudiced.

¶ 42    For these reasons, we affirm the decision of the circuit court which granted the State's petition to deny defendant's pretrial release.

¶ 43    Affirmed.

¶ 44    JUSTICE OCASIO, specially concurring:

¶ 45    I agree with the majority's decision with the exception of the discussion of the standard for reviewing the trial court's ultimate findings in appeals from detention orders. *Supra* ¶¶ 37-38, 41. Given the significance of the right at stake at a detention hearing, *de novo* review of the trial court's ultimate findings is appropriate when, as is usually the case, they do not involve determinations of historical fact. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 79-138 (Ellis, J. concurring).